FILED
December 19, 2023
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____klw_____
DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br>Plaintiff<br><br>v<br><br>(1) SAINT JOVITE YOUNGBLOOD<br>aka Kota Youngblood<br>Defendant. | CRIMINAL NO. A-23-CR-135-RP<br><br>**SECOND SUPERSEDING INDICTMENT**<br><br>[Vio: 18 U.S.C. §2 – Aiding & Abetting;<br>18 U.S.C. § 1343 – Wire Fraud;<br>18 U.S.C. § 1957 – Engaging in Monetary Transaction in Criminally Derived Property]<br><br>Notice of Government's Demand for Forfeiture |

**THE GRAND JURY CHARGES:**

## INTRODUCTION

1. At all times relevant to this indictment, Saint Jovite Youngblood, aka Kota Youngblood, was residing in the Western District of Texas.

2. Youngblood was not an employee of any business during the relevant time frames of this indictment.

3. Youngblood falsely claimed to have been part of the U.S. Army's 82nd Airborne Division. He further falsely claimed that he was a member of the U.S. Army's Delta Force, a special operations unit. Delta Force is known for its hostage rescue capabilities.

4. Youngblood claimed to be engaged in investment opportunities involving items such as gold bars and coins, antique clocks, sports memorabilia, and other allegedly valuable items that could generate significant returns on funds provided to him.

## THE SCHEME

5. Beginning at least as early as April 2021 and continuing until on or about July 30, 2023, Youngblood, aided and abetted by others, devised and intended to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises.

6. It was part of the scheme and artifice that Youngblood made false and fraudulent promises, representations, material omissions and pretenses in connection with the scheme to defraud. It was part of the scheme and artifice that Youngblood obtained cash and assets from victims for his personal use and benefit.

7. It was part of the scheme and artifice that Youngblood transmitted and caused to be transmitted by others wire communications in interstate commerce, writings, signals, signs, pictures and sounds to and from the Western District of Texas to locations outside of the State of Texas. These wire communications included, but were not limited to, the following:

   a. telephone calls;

   b. email communications via the internet;

   c. electronic communications involving the clearing of checks and other financial transactions through the Federal Reserve banking system; and

   d. transfer by wire and electronic means of funds between financial institutions located outside the State of Texas and financial institutions in the Western District of Texas.

8. It was part of the scheme and artifice that Youngblood represented that the funds obtained would be used to provide protection from violence by Mexican drug cartel members against specific individuals, primarily family members. Additionally, Youngblood also represented that any money provided to him would be returned to the investor with a significant return on the investment money. Among other claims, Youngblood told investors that he had

access to a large number of gold bars that Youngblood was going to then sell and share the profits with the investor. Contrary to these representations, Youngblood used the majority of the money on junkets to Las Vegas to gamble in casinos.

9. It was part of the scheme and artifice that Youngblood offered to let investors hold items with alleged significant dollar values as collateral for their payments. Among the items identified by Youngblood were baseball bats used by Babe Ruth and Lou Gehrig, antique clocks, and a Confederate era flag. The collateral items were used to lull the investors into the false belief that their investment was secure.

10. Youngblood further lulled investors by initially providing some returns of their money. The return of a portion of the investors' proceeds either came from the investors' own money or other individuals whom Youngblood was defrauding.

## COUNTS 1-4
## Wire Fraud
## [18 U.S.C. § 1343 and 18 U.S.C. § 2]

11. Paragraphs 1 through 10 above are re-alleged and incorporated as though fully set forth here.

12. From at least as early as April 2021 and continuing until on or about July 30, 2023, in the Western District of Texas and elsewhere,

**SAINT JOVITE YOUNGBLOOD,**
**aka KOTA YOUNGBLOOD,**

aided and abetted by others known and unknown to the Grand Jury, having devised and intended to devise a scheme and artifice to defraud, as set forth above, to obtain money and property by means of false, misleading, and fraudulent pretenses, representations, and promises, and omissions of material facts, did knowingly cause to be transmitted by wire, radio, or television communication in interstate and foreign commerce, a wire transfer of funds, constituting and

containing a writing, sign, signal, picture, and sound, for the purpose of executing and attempting to execute said scheme and artifice, on or about the date set forth below:

| Count | Date (on or about) | Description of Wire Transmission |
|---|---|---|
| 1 | July 27, 2022 | A wire transaction in the amount of $36,000 drawn from a Washington Federal Bank account in Seattle, Washington, was deposited to E.P.'s Wells Fargo Bank Account xxx6673 in Austin, Texas, for payment to provide protection against threats to E.P. and family. |
| 2 | August 16, 2022 | A wire transaction in the amount of $50,000 drawn from a Washington Federal Bank account in Seattle, Washington, was deposited to E.P.'s Wells Fargo Bank Account xxx6673 in Austin, Texas, for payment to provide protection against threats to E.P. and family. |
| 3 | September 30, 2021 | A wire transaction in the amount of $235,000 drawn from a Fidelity Roth IRA account in New York, New York, was deposited to G.S.'s Wells Fargo Bank Account xxx2952, in Austin, Texas, for payment to provide protection against threats to A.H. and family. |
| 4 | July 3, 2023 | A wire transaction in the amount of $19,800 drawn from H.L.'s Bank of America account in Arcadia, California, was deposited to Youngblood's Navy Federal Credit Union account xxx7070, in Austin, Texas, for payment to facilitate an investment related to gold. |

All in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 2.

## COUNT FIVE
### Engaging in Monetary Transaction in Criminally Derived Property
**[18 U.S.C. § 1957]**

13. Paragraphs 1 through 10 above are re-alleged and incorporated as though fully set forth here.

14. On or about the date set forth below, in the Western District of Texas and elsewhere,

**SAINT JOVITE YOUNGBLOOD,
aka KOTA YOUNGBLOOD,**

did knowingly engage and attempt to engage in a monetary transaction in criminally derived property of a value greater than $10,000, which property was derived from specified unlawful activity, namely, Wire Fraud, contrary to 18 U.S.C. § 1343:

| Count | Date | Description of Monetary Transaction |
|---|---|---|
| 5 | July 27, 2022 | A check in the amount of $83,000 drawn on E.P.'s business account at Wells Fargo Bank Account xxx7818 in Austin, Texas to J.H. J.H. then cashed the check and provided the proceeds to Youngblood. |

In violation of 18 U.S.C. § 1957.

## NOTICE OF GOVERNMENT'S DEMAND FOR FORFEITURE
[*See* Fed. R. Crim. P.]

### I.
### Wire Fraud Violations and Forfeiture Statutes
**[18 U.S.C. § 1343 subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C)]**

As a result of the foregoing criminal violations set forth in Counts One through Five, the United States gives notice to Defendant Saint Jovite Youngblood of its intent to seek the forfeiture of the below-described property upon conviction and pursuant to Fed. R. Crim. P. 32.2 and 18 U.S.C. § 981(a)(1)(C), which is made applicable to criminal forfeiture by 28 U.S.C. § 2461(c). Section 981 provides:

> **18 U.S.C. § 981.  Civil Forfeiture**
> **(a)(1)** The following property is subject to forfeiture to the United States:
> \* \* \*
> **(C)** Any property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

### II.
### Money Laundering Violations and Forfeiture Statutes
**[18 U.S.C. § 1957 and subject to forfeiture pursuant to 18 U.S.C. § 982(a)(1)]**

As a result of the foregoing criminal violation as set forth in Count Five, the United States gives notice to Defendant Saint Jovite Youngblood of its intent to seek the forfeiture of the below-described property upon conviction and pursuant to Fed. R. Crim. P. 32.2 and 18 U.S.C. § 982(a)(1), which states the following:

> **18 U.S.C. § 982.  Criminal Forfeiture**
> **(a)(1)** The court, in imposing sentence on a person convicted of an offense in violation of section 1956, 1957, or 1960 of this title, shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property.

This Notice of Demand for Forfeiture includes, but is not limited to, the property described in the paragraphs below.

### III.
### Money Judgment

A sum of money equal to the amount of proceeds obtained directly or indirectly as a result of the violations set forth in Counts One through Five and representing the amount of property involved in the violations for which Defendant Saint Jovite Youngblood is liable.

### IV.
### Substitute Assets

If any of the properties described above, as a result of any act or omission of Defendant Saint Jovite Youngblood:

 a. cannot be located upon the exercise of due diligence;
 b. has been transferred or sold to, or deposited with, a third person;
 c. has been placed beyond the jurisdiction of the Court;
 d. has been substantially diminished in value; or
 e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States of America to seek the forfeiture of any other property owned by Defendant Saint Jovite Youngblood up to the value of said Money Judgment as substitute assets, pursuant to Fed. R. Crim. P. 32.2 and 21 U.S.C. § 853(p) and Fed. R. Crim. P. 32.2(e)(1).

A TRUE BILL:

_____
FOREPERSON OF THE GRAND JURY

JAIME ESPARZA,
UNITED STATES ATTORNEY

BY: *Michelle E. Fernald*
For: DANIEL D. GUESS AND MATTHEW HARDING
ASSISTANT UNITED STATES ATTORNEYS