UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | NO.   A-23-CR-135 (RP) |
| | § | |
| SAINT JOVITE YOUNGBLOOD | § | |
| | § | |

**DEFENDANT SAINT YOUNGBLOOD'S RESPONSE TO THE GOVERNMENT'S NOTICE PURUSANT TO FEDERAL RULE OF EVIDENCE 404(b)**

Mr. Youngblood, through undersigned counsel, respectfully submits this response to the Government's Initial Notice Pursuant to Federal Rule of Evidence 404(b) ("Gov't 404(b) Notice," ECF No. 68).

**I.      Legal Framework**

Rule 404(b) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). Rule 404(b) "follows the venerable principle that evidence of extrinsic offenses should not be admitted solely to demonstrate the defendant's bad character." *United States v. Beechum*, 582 F.2d 898, 910 (5th Cir. 1978) (en banc) (noting that such evidence, even if relevant, is "inherently prejudicial"). "Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."  Fed. R. Evid. 404(b).  This rule "guard[s] against the inherent danger that the admission of 'other acts' evidence might lead a jury to convict a defendant not of the charged offense, but instead of an extrinsic offense." *United States v. Crawley*, 533 F.3d 349, 353 (5th Cir. 2008) (quotations omitted).

1

The Fifth Circuit has adopted a two-part test for determining the admissibility of evidence under Rule 404(b). *United States v. Kinchen*, 729 F.3d 466, 471 (5th Cir. 2013). First, the Court must determine if "the extrinsic evidence is relevant to an issue other than the defendant's character." *Beechum*, 582 F.2d at 911; *United States v. Jackson*, 339 F.3d 349, 354 (5th Cir. 2003) ("Evidence in criminal trials must be strictly relevant to the particular offense charged."). Evidence is relevant if it has "any tendency" to make a fact of consequence to determining the action "more or less probable than it would be without the evidence." Fed. R. Evid. 401. Second, "the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of [R]ule 403." *Beechum*, 582 F.2d at 911. To determine whether undue prejudice substantially outweighs probative value courts should consider: "(1) the government's need for the extrinsic evidence, (2) the similarity between the extrinsic and charged offenses, (3) the amount of time separating the two offenses, and (4) the court's limiting instructions." *Kinchen,* 729 F.3d at 473. Finally, the Court must also "consider the overall prejudicial effect of the extrinsic evidence." *United States v. Juarez*, 866 F.3d 622, 627 (5th Cir. 2017).

## II. The Pending Charges

The Second Superseding Indictment charges Mr. Youngblood with four counts of wire fraud encompassing a total of three named victims and one count of engaging in a monetary transaction with criminally derived funds obtained from the same victim named in Counts One and Two and facilitated by a fourth named individual. The Second Superseding Indictment alleges the following as the scheme to defraud:

> Youngblood represented that the funds obtained would be used to provide protection from violence by Mexican drug cartel members against specific individuals, primarily family members. Additionally, Mr. Youngblood also

2

  represented that any money provided to him would be returned to the investor with a significant return on the investment money.

Second Superseding Indictment, ECF No. 45, at ¶8. The Indictment further alleges that Mr. Youngblood told investors he had access to a large number of gold bars that he was going to sell and share the profits with the investors and that he offered the investors "collateral" items with "alleged significant dollar values," such as baseball bats, antique clocks, and a Confederate flag. ECF No. 45, at ¶ 9. The government alleges that Mr. Youngblood obtained money through this scheme and then gambled it away at Vegas casinos. ECF No. 45, at ¶ 8.

  The indictment alleges the fraud scheme began "at least as early as April 2021" and continued until July 30, 2023. ECF No. 45, at ¶ 5.

  **III.**  **Argument**

  A. **The Court should exclude evidence of Mr. Youngblood's purported "attempted and successful extortion and fraud" as it relates to "various other victims using the same or similar schemes."**

  The government has noticed its intent to introduce evidence that "Youngblood directly and indirectly attempted to or did extort and defraud various other victims using the same or similar schemes" in addition to the victims specifically referenced in the Second Superseding Indictment. Gov't 404(b) Notice, ECF No. 68, at 5.

  The government includes in its 404(b) notice a list of fifty (50) people it claims are other victims or attempted victims the government may call at trial. These 50 names stand in contrast to the three (3) named victims in the Second Superseding Indictment. The Court should exclude the evidence of the 50 additional individuals the government characterizes as Mr. Youngblood's "attempted and successful extortion and fraud" because such evidence is not intrinsic to the offenses charged and, further, does not meet the other requirements of admissibility under Rule 404(b).

3

**1. The government's proposed list of 50 "victims and attempted victims" is not intrinsic to the charges in the indictment.**

The government first argues that the testimony of the 50 people it has noticed as additional victims is intrinsic evidence to the charged offenses. ECF No. 68, at p. 7. The Court should reject this argument.

"'Other act' evidence is 'intrinsic' only when the evidence of the other act and the evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged." *United States v. Williams*, 900 F.2d 823, 825 (5th Cir. 1990). Here, evidence of other alleged fraudulent schemes or victims is extrinsic to the charged fraudulent scheme because the uncharged conduct is not "inextricably intertwined" with the four counts of wire fraud and the single count of engaging in a monetary transaction in criminally derived property charged in the second superseding indictment. *See United States v. Nguyen,* 504 F.3d 561, 574 (5th Cir.2007) ("Though the conspirators used the same scheme at all of the properties, each [real estate] deal was a distinct and distinguishable event.").

The 50 people do not fall into the same or similar scheme alleged in the indictment. The 50 names in the government's 404(b) notice fall into a variety of buckets, most *outside* the fraud scheme alleged:

- Seven names on the list are individuals Mr. Youngblood allegedly asked for money on one occasion, was told no, and no further interaction occurred.[1] No money exchange occurred. To call them "attempted victims" overstates the relationship. In no way were these interactions "inextricably intertwined" with the fraud scheme charged in the indictment.

---

[1] John Caldwell, Jaqueline Cantu, Jonathan Hanna, Kirk Lowman, James Noah Melton, Zachary Lee Noah, Chad York.

- Seven other names on the list are individuals, including two sets of spouses, who allegedly gave money to Mr. Youngblood years, in one case over a decade, before the scheme alleged in the indictment.[2] Their inclusion as witnesses at trial would constructively amend the indictment and would expand the fraud scheme well past the statute of limitations.

- Seven individuals on the list gave money in response to promises of investment opportunities unrelated to representations about the cartel or dangers from the cartel, *i.e.* not in response to the fraudulent scheme alleged in the indictment.[3]

- Two other names on the list are people who claim Mr. Youngblood took possession of and never returned potentially valuable objects that belonged to them.[4] These factual scenarios set out, at most, state property theft allegations, not conduct intertwined with the federal crimes charged in the indictment.

- Two other names on the list are individuals who make no claim to ever having interacted with Mr. Youngblood at all.[5] They claim they gave money to James Holloway at Mr. Holloway's urging alone.

To characterize the lengthy list of 50 names as "victims or attempted victims" of "the same or similar schemes" is factually inaccurate.[6] These named individuals are not all victims of similar schemes and their experiences with Mr. Youngblood are not sufficiently similar factually to make

---

[2] The indictment alleges a fraud scheme occurring from April 2021 to July 30, 2023. The Lees (2 names on the government's list) allegedly gave money to Mr. Youngblood in the year 2010 in a different state. Seth Holloway allegedly gave money to Mr. Youngblood in the fall of 2019 and in December 2020. The York couple allegedly gave money to Mr. Youngblood in 2016, almost six years prior to the scheme alleged in the indictment, and an individual named Stephanie Titsworth allegedly gave Mr. Youngblood a loan in the year 2018 that was never fully repaid.

[3] Roger and Anna Lee, Karol and Jim DeVries, Rebecca and Ricky Kumar, Clark Snyder.

[4] Diane Bankston and Jeff Bridgman.

[5] Stephen Catoe (or Steven Katoe) and Judy Edwards.

[6] The defense does not concede that the other names on the government's list not specifically addressed here are intrinsic.

5

them intrinsic to the offenses charged. They are not "inextricably intertwined," were not part of a single criminal episode, nor were any of the other interactions "necessary preliminaries" to the offenses for which Mr. Youngblood is on trial. *Williams*, 900 F.2d at 825.

The government's position is too broad. Evidence is only intrinsic to the crime charged if it is (1) inextricably intertwined, (2) both acts are part of a single criminal episode, or (3) the other acts were necessary preliminaries to the offense charged. *Williams*, 900 F.2d at 825. The indictment charges four counts of wire fraud over a specific window of time based on a specifically alleged fraudulent scheme. Evidence of every individual Mr. Youngblood ever solicited money from or received money from, even if Mr. Youngblood made similar representations about his background, credentials, skillset, employment, source of income, etc., to these individuals, is not intrinsic to the offenses charged.

Similarity between actions or schemes is not sufficient to establish that they are intrinsic to the charged acts. *See United States v. Stephens*, 571 F.3d 401, 410 (5th Cir. 2009). In *Stephens*, the Fifth Circuit held that evidence that the defendant had previously created a fake charity website was extrinsic to the charged scheme of making another fake charity website because they were distinct events. *Id.*

Similarly, in *United States v. Williams*, the defendant was charged with use of the mail to facilitate drug trafficking, and the Fifth Circuit upheld a finding that previous, similar mailings were extrinsic. *United States v. Williams*, 900 F.2d 823, 825 (5th Cir. 1990). The Court reasoned the various mailings were distinct and distinguishable events none of which constituted a necessary preliminary for another. *Id.*

The government's list of 50 "victims or attempted victims" is not intrinsic evidence to the charges in the indictment. Even if they were victims of different schemes, the schemes are not

sufficiently factually similar so as to be inextricably intertwined with the scheme alleged in the indictment. None of the named individuals the government claims were other victims or attempted victims are part of a "single criminal episode" nor were their alleged interactions with Mr. Youngblood "necessary preliminaries to the crime charged" here, as the Fifth Circuit requires under *Williams* for a finding that such evidence is intrinsic. 900 F.2d at 825.

> **2. The evidence does not meet the standard for proving prior act evidence and its admission would result in a constructive amendment to the indictment.**

Because the other act evidence is extrinsic, it must be relevant to an issue other than character to be admissible. *Beechum*, 582 F.2d at 911. The government has failed to articulate a permitted purpose for this evidence. Additionally, the government's notice fails to provide any reasoning to support a permitted purpose, as Rule 404(b)(3)(B) requires.

In its 404(b) notice, the government lists out every permissible 404(b) reason for admitting its other victim evidence. Gov't 404(b) Notice at 8. But the government fails to explain *why* such evidence would "demonstrate Youngblood's intent, knowledge, plan, absence of mistake, and lack of accident." Also, the government argues that extrinsic evidence—testimony from other "victims and attempted victims" about their interactions with Mr. Youngblood—would be admissible to prove Mr. Youngblood's *identity* with respect to the four named victims in the Second Superseding Indictment. This makes little sense. No one disputes Mr. Youngblood's identity. That will not be an issue for the jury to resolve. The named victims can testify as to their face-to-face interactions with Mr. Youngblood. The testimony of other people who had separate, unrelated interactions with Mr. Youngblood, years, or even decades, before, is not relevant or admissible to prove his "identity" with respect to specific victims and to prove the specific interactions alleged in the indictment.

7

Finally, the government argues that the additional 50 "attempted victims or other victims" should get to testify about uncharged fraudulent content because they are "friends or acquaintances" of the victims named in the Second Superseding Indictment. Friendship or acquaintance is not a permissible ground under Rule 404(b) for admissibility. In sum, the government seeks to present a voluminous number of witnesses to testify about uncharged, factually dissimilar conduct, to radically expand the charged crimes, in an effort to convict Mr. Youngblood for being a liar rather for violating the specific offenses of wire fraud and money laundering charged in the indictment. This is exactly the type of impermissible character evidence that Rule 404(a) prohibits, and the Court should exclude it.

### 3. The prejudicial impact of this evidence substantially outweighs its probative value.

Because the other act/other victim evidence is extrinsic, it must be relevant to an issue other than character to be admissible. *Beechum*, 582 F.2d at 911.

For all the reasons discussed above, evidence of other alleged fraudulent schemes are not relevant to the crimes charged. The Fifth Circuit has repeatedly ruled that 404(b) "evidence in criminal trials must be strictly relevant to the particular offense charged." *United States v. Gutierrez-Mendez*, 752 F.3d 418, 423-24 (5th Cir. 2014).

Furthermore, even if the Court finds the evidence of other alleged misconduct or uncharged fraudulent schemes relevant to a fact of consequence, it is still inadmissible under Federal Rule of Evidence 403. The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Here, any probative value of "other victim" evidence would be substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury. Allowing 50 "victims or attempted victims" of uncharged, unproven and factually dissimilar schemes to testify would be a monumental waste of time, and would unduly prolong the trial. Allowing the government to introduce this evidence would make the trial one where Mr. Youngblood was on trial for all his past conduct, not for the offenses alleged in the indictment. It would confuse the issues and risk the jury convicting not on the charged conduct, but on prior uncharged acts.

Finally, admitting such evidence raises the real possibility of a constructive amendment to the indictment. If the government puts on fifty extrinsic witnesses to offer testimony about uncharged conduct to bolster its three named victims, the jury will impermissibly convict on crimes not charged in the indictment.

B. **The Court should exclude evidence about Mr. Youngblood's statements about the death of his son.**

For the reasons set out in his motions in limine, admission of this testimony is substantially more prejudicial than probative and should be excluded under Rule 403. *See* ECF No. 64 (Defendant's Motions in Limine), at p. 6-7.

C. **The Court should exclude evidence about Mr. Youngblood's possession and transfer of firearms.**

The government, in its 404(b) notice, argues that Mr. Youngblood's possession and transfer of firearms is intrinsic to the charged scheme and offenses. The government also argues, to the extent the Court finds his possession and transfer of firearms extrinsic to the charged offenses, the evidence is relevant to show his "plan to extort and defraud the individuals directly referenced in the Second Superseding Indictment and those named above." ECF No. 68, at 12.

### 1. Evidence of firearm possession and transfer is not intrinsic to the wire fraud offenses alleged in the indictment.

Mr. Youngblood's possession and transfer of firearms is not intrinsic to the charged offenses. "'Other act' evidence is 'intrinsic' when the evidence of the other act and the evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged. *United States v. Williams*, 900 F.2d 823, 825 (5th Cir. 1990).

Mr. Youngblood's possession and transfer of firearms is not intrinsic to his charges of wire fraud. The government argues the evidence is intrinsic to the charged offense because he transferred the firearms to Eric Swanson, Lane Holloway, and Jason York to somehow convince them they were in danger from the cartel. None of the people who claim they were given a firearm by Mr. Youngblood are named as victims in the indictment.

The scheme to defraud charged in the indictment does not encompass these individuals. Giving a firearm to people not named in the indictment is not inextricably intertwined with the charged counts. Nor can it be said that these acts were part of a single criminal episode or necessary preliminaries to the fraud offenses charged. That Mr. Youngblood transferred firearms to individuals not named in the indictment is not necessary to complete the story of the counts of wire fraud in the indictment.

The government also contends that Mr. Youngblood's possession of a firearm is intrinsic to the charged offenses because Eric Perardi[7] saw Mr. Youngblood's wife with a pistol at their home. The government claims Mr. Youngblood later told Mr. Perardi that his wife was upset because of his son's recent murder. The only other witness to this alleged encounter, aside from Eric Perardi, was Gloria Youngblood, Mr. Youngblood's wife. Notably, in her voluntary interview

---

[7] Eric Perardi is the named victim in Counts 1, 2, and 5 of the Second Superseding Indictment.

to FBI agents she was specifically asked about this incident and disputed Mr. Perardi's version of the encounter. An attempt to backdoor in testimony about *her* firearm possession as attributable to Mr. Youngblood as 404(b) evidence is an attempted end run around the spousal privilege that the Court should not allow.

### 2. Evidence of firearm possession has no permitted purpose under Rule 404(b).

This extrinsic evidence does not meet the requirements of Rule 404(b). First, the government has not identified a permissible purpose for this evidence other than Mr. Youngblood's character. The government argues evidence of the firearms is admissible to show Mr. Youngblood's plan to extort and defraud those people named in the indictment. To use extrinsic evidence as evidence as a plan, "it is not enough to show that each crime was 'planned' in the same way; rather, there must be some overall scheme of which each of the crimes is but a part." *United States v. Anderson*, 933 F.2d 1261, 1273 (5th Cir. 1991) (quoting 22 C. Wright & K. Graham, *Federal Practice and Procedure* § 5244 at 494 (Supp.1991)).

The government has provided no evidence that Mr. Youngblood's transfer and possession of firearms is part of the scheme to defraud alleged in the indictment. The government has not established that any of the victims named in the indictment ever received a firearm from Mr. Youngblood, or that the victims named in the indictment even knew he gave firearms to others. The Fifth Circuit has repeatedly ruled that 404(b) "evidence in criminal trials must be strictly relevant to the particular offense charged." *United States v. Gutierrez-Mendez*, 752 F.3d 418, 423-24 (5th Cir. 2014). Evidence that Mr. Youngblood gave firearms to other people, not named victims of the fraud scheme, and without any evidence that the name victims were even aware that Mr. Youngblood was loaning firearms to other people, is not relevant to the offense charged.

Finally, even if the Court believes evidence of the firearms possession is relevant to a fact of consequence, it is still excludable because any probative value is substantially outweighed by the likelihood of undue prejudice. The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The government does not suggest that any firearm possession by Mr. Youngblood or others was unlawful. The probative value of introducing evidence that Mr. Youngblood owned firearms is substantially outweighed by the danger of unfair prejudice and risks the jury convicting solely on the basis of an emotional reaction and strong feelings or personal opinions about gun ownership.

D.  **The Court should exclude evidence of Mr. Youngblood's reported income and taxes**

The government seeks to introduce evidence of Mr. Youngblood's reported income, including emails and tax documents concerning his finances. Mr. Youngblood's tax returns, tax filings, and any other evidence of his tax compliance is not intrinsic to the charged offenses. The evidence is not 'inextricably intertwined' with the evidence of the scheme to defraud charged in the indictment. *Williams*, 900 F.2d at 825. Nor can his tax history be said to be part of the same "criminal episode" or a "necessary preliminary" to the charged scheme to defraud. *Id.*

The government also asserts that this evidence shows Mr. Youngblood's intent, knowledge, plan, and absence of mistake. Evidence of Mr. Youngblood's tax compliance, however, is not relevant to any issue beyond Mr. Youngblood's character. While the Fifth Circuit has found a defendant's tax history relevant where the defendant is charged with another, similar tax offense, *see United States v. Boyd*, 773 F.3d 637, 643 (5th Cir. 2014) (holding that evidence of late filings and warning notices from the IRS was admissible to prove defendant's willfulness in

evading taxes and knowledge of tax system), Mr. Youngblood is not charged with a tax offense. His history of tax filings and tax compliance is not relevant to any fact of consequence.

Even if the Court finds some permissible 404(b) purpose for the evidence of Mr. Youngblood's tax returns and tax filings, the probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury. The probative value of the evidence is limited. Other acts are more probative when they are similar to the charged acts. *See Beechum*, 582 F.2d at 913. Mr. Youngblood's tax history is not similar to the offenses charged, and it says little about whether he committed the offenses charged in the indictment.[8]

In contrast to its limited probative value, there are substantial risks of misleading the jury, confusing the issues, and unfair prejudice in admitting evidence of Mr. Youngblood's tax returns. Evidence is unfairly prejudicial if it possesses "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403 advisory committee's note. "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States,* 519 U.S. 172, 180 (1997). One such improper ground is where, as here, the proposed evidence generalizes Mr. Youngblood's previous bad acts into bad character evidence and, thereby, risks the jury convicting based on this propensity evidence. *See id.* This concern is "particularly great" when, as here, the other acts have gone unpunished. *Beechum*, 582 F.2d at 914.

---

[8] The government will present evidence in the form of testimony and bank records from multiple witnesses and sources that Mr. Youngblood received money from the victims, including large amounts of cash. The government will also put on evidence in the form of casino records that Mr. Youngblood gambled in high volume with high dollar amounts of cash in Las Vegas. What he reported as income on his annual tax returns is neither particularly relevant to proving the fraud alleged in the indictment nor is it the government's best evidence of such.

Finally, like the evidence of additional uncharged victims or attempted victims, admitting evidence of Mr. Youngblood's tax filings and reported income raises the real possibility of a constructive amendment to the indictment in that it asks the jury to convict Mr. Youngblood of crimes not charged. Accordingly, Mr. Youngblood requests the Court exclude evidence of his tax returns, tax filings, and tax status from the trial and deny the government's motion to admit such evidence under Rule 404(b).

## IV.     Conclusion

For all these reasons, Mr. Youngblood respectfully asks this Court to deny and/or limit the evidence the government seeks to offer in its 404(b) notice.

Respectfully submitted,

MAUREEN SCOTT FRANCO
Federal Public Defender

_____
/s/ CHARLOTTE A. HERRING
Assistant Federal Public Defender
Western District of Texas
Lavaca Plaza
504 Lavaca St., Ste. 960
Austin, Texas 78701
(512) 916-5025
(512) 916-5035 (FAX)
TX Bar Number: 24064026
*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of March 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Dan Guess
Matt Harding
Assistant U.S. Attorneys
903 San Jacinto, Ste. 334
Austin, TX 78701

/s/  CHARLOTTE A. HERRING