UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA, | § |
| | § |
| v. | § CRIMINAL NO. A-23-CR-135-RP |
| | § |
| SAINT JOVITE YOUNGBLOOD | § |
| a.k.a. Kota Youngblood, | § |
| Defendant. | § |

**GOVERNMENT'S REPLY TO DEFENDANT'S RESPONSES AND SUPPLEMENTAL 404(b) NOTICE**

In his responses to the Government's Motion in Limine and 404(b) Notice, Youngblood tries to use the rules of evidence as both a sword and a shield: With one breath, he challenges the Government to prove the effect his words and acts had on the victims; but in the next, he asks this Court to exclude evidence of those words and acts because such evidence would be unfairly prejudicial to him. These arguments should be rejected.

**ARGUMENT AND AUTHORITIES**

**1. Youngblood's prior successful and attempted fraud is admissible as either intrinsic or extrinsic evidence.**

Youngblood claims his prior frauds and attempts are neither intrinsic to the charged offenses nor admissible as extrinsic evidence under Federal Rule of Evidence 404(b). *See* Def.'s Resp. [ECF No. 70] at 4–7. Youngblood further claims that the Government failed to articulate the reasoning behind the admissibility of these acts, assuming they are extrinsic. *Id.* at 7. Youngblood's arguments should be rejected.

Unquestionably, Youngblood's temporally proximate fraud schemes are relevant to his intent.[1] *See United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) ("Where the issue

---

[1] The Government refers to these as "extrinsic offenses" in this filing for the sake of brevity; as

1

addressed is the defendant's intent to commit the offense charged, the relevancy of the extrinsic offense derives from the defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic and charged offenses. The reasoning is that because the defendant had unlawful intent in the extrinsic offense, it is less likely that he had lawful intent in the present offense.").[2]

Where, as here, the extrinsic offense involves the same intent required to prove the charged offense, the extrinsic offense is relevant, and a court must only consider whether the requirements of Rule 403 are met. *United States v. Cockrell*, 587 F.3d 674, 679 (5th Cir. 2009). Under Rule 403, relevant evidence is admissible unless its probative value is substantially outweighed by the danger of unfair prejudice. *See* Fed. R. Evid. 403. Where extrinsic offenses are similar and close in time to the charged offenses, they are of high probative value. *See Beechum*, 582 F.2d at 915. Meanwhile, some hallmarks of highly prejudicial evidence include violent acts, acts greater in magnitude than the charged crimes, and acts that occupy more of the jury's time than the evidence of the charged offenses—none of which are present in the extrinsic offenses.[3] *See United States v. Yi*, 460 F.3d 623, 633 (5th Cir. 2006). To the extent there is any unfair prejudice associated with such evidence, it can be mitigated through a limiting instruction. *See United States v. Broussard*, 80 F.3d 1025, 1040 (5th Cir. 1996).

Further, as stated in the Government's initial 404(b) notice, because of the similarities

---

stated in its original 404(b) notice and explained further below, the Government maintains that much of this evidence is in fact intrinsic to the charged offenses.

[2] Although the Government cited *Beechum* and its progeny for this proposition in its original 404(b) notice, the Government provides this supplemental notice to Youngblood out of an abundance of caution in light of his claim of lack of sufficient notice.

[3] Youngblood suggests the Government intends to call all the victims and potential victims listed in its 404(b) notice. *See* Def.'s Resp. [ECF No. 70] at 3–4. Of course, the Government has no such intention; however, because the Government is not privy to the issues or defenses Youngblood may raise, it has provided broad notice to prevent surprise to Youngblood.

between the charged offenses and Youngblood's successful and attempted frauds on other victims, evidence of the other frauds is admissible to show Youngblood's knowledge, motive, and plan. *See United States v. Cooks*, 589 F.3d 173, 182 (5th Cir. 2009) ("[E]xtrinsic evidence of using the same scheme repeatedly is relevant to intent, knowledge, motive and plan in that it demonstrates how an operation works.") (cleaned up).

Youngblood claims these extrinsic offenses cannot be used to prove his identity because his identity will not be in issue. However, in the time since the execution of the search warrant at his house, Youngblood has attempted to blame other individuals, including James Holloway, for his illegal acts. It seems likely he will continue do so at trial. Evidence that Youngblood defrauded (and attempted to defraud) numerous other people in similar ways without any involvement by Holloway or others is relevant to prove his identity as the perpetrator of the charged scheme. Whether this is characterized as proof of identity, the existence of a scheme orchestrated by Youngblood, his intent or knowledge, or *modus operandi*, it is clearly relevant under Rule 404(b). *See* Fed. R. Evid. 404(b); *Cooks*, 589 F.3d at 182; *Beechum*, 582 F.2d at 911.

Additionally, much of this evidence is admissible without regard to Rule 404(b) because it is intrinsic to the charged offenses. Evidence is intrinsic when it completes the story of the crime by proving the immediate context of events in time and place,[4] *United States v. Coleman*, 78 F.3d 154, 156 (5th Cir. 1996), or allows the jury to evaluate all the circumstances under which the defendant acted, *United States v. Randall*, 887 F.2d 1262, 1268 (5th Cir. 1989). Further, where, as

---

[4] For instance, evidence of Currency Transaction Reports (CTRs) will provide context for the financial investigation in this case, including how investigators discovered Youngblood's enormous gambling losses. Similarly, it is unlikely witnesses from the relevant casinos would be able to explain their records without reference to their currency transaction reporting requirements. Because CTRs are mandated by law, they can hardly be interpreted as evidence of financial wrongdoing by Youngblood.

here, a defendant is charged with a continuing scheme to defraud, the prosecution may offer evidence of all the surrounding circumstances, including uncharged acts of fraud, as intrinsic evidence of the charged fraud scheme. *See United States v. Dula*, 989 F.2d 772, 777–78 (5th Cir. 1993). Similarly, where a defendant commingles funds from various frauds and uses those funds to make lulling payments to victims, as happened here, evidence of those other frauds is intrinsic. *See United States v. Freeman*, 434 F.3d 369, 374 (5th Cir. 2005).

Finally, given Youngblood's apparently narrow view of intrinsic evidence and out of an abundance of caution, the Government provides notice that it may introduce evidence of Youngblood's acts and words, directly or through intermediaries, that promoted the extortion or fraud against Eric Perardi, James Holloway, Hanfu Lee, Gary and Dale Snider, and the other victims or attempted victims named in the Government's 404(b) notice. Similarly, the Government provides notice that it intends to offer evidence of derogatory and threatening emails, flyers, phone calls, and social media posts made against such victims and attempted victims at Youngblood's direction. As described herein, such acts and words are not only intrinsically admissible to prove the materiality of Youngblood's misrepresentations, but also admissible as extrinsic evidence of Youngblood's intent, knowledge, plan, scheme, and lack of mistake or accident.

**2. Youngblood's response to the Government's motion in limine highlights the relevance and probative value of the evidence Youngblood wishes to exclude.**

In his response to the Government's motion in limine, Youngblood suggests he intends to challenge the materiality of his lies to victims: That is, Youngblood would argue both that the victims did not reasonably rely on his misrepresentations and that he neither knew nor had reason to know that they would unreasonably rely on them.[5] *See* Def.'s Resp. [ECF No. 69] at 1–3.

---

[5] Youngblood also misrepresents the Government's motion in limine on this issue, claiming that the Government is seeking to "prohibit any argument or testimony concerning the 'victims'

As Youngblood admits, "[t]estimony as to what statements influenced the government's victims and why they decided to give Mr. Youngblood . . . money directly bears upon the element of materiality." *See id.* at 2. Youngblood likewise acknowledges that "[t]he effect of Mr. Youngblood's statements on the individuals who paid money is critical evidence to the fact question of materiality," as is Youngblood's knowledge of how those victim might react. *See id.* at 2–3.

Of course, neither reasonable nor unreasonable people make decisions in a vacuum. Youngblood's words, including his lies about his military and law enforcement background; the purported death of his son; his wife's alleged fear of the people who killed his son;[6] the need for victims to defend themselves with firearms; the defamatory and threatening emails, flyers, telephone calls, and social media posts he instructed others to make;[7] his good relationships with, and successful investments on behalf of, other individuals; and his claimed employment and

---

naivety, carelessness, negligence, greed, or foolishness, or unreasonable reliance on the statements of the defendant.'" *See* Def.'s Resp. [ECF No. 69] at 1. In fact, the Government has asked the Court to prohibit testimony or argument indicating that those factors are themselves sufficient to constitute a defense to wire fraud—which they are not. *See* Gov't Mot. [ECF No. 67] at 1. As Youngblood apparently acknowledges, a victim could display every one of those characteristics, and also unreasonably rely on a defendant's false statements, without necessarily negating a defendant's guilt.

[6] Youngblood's apparent claim of spousal privilege surrounding these statements is without merit. *See* Def.'s Resp. [ECF No. 70] at 10–11. Clearly, there is no violation of spousal privilege for Eric Perardi to testify that Youngblood's apparently distressed wife pointed a pistol at him. Nor is spousal privilege implicated in Youngblood's voluntary statement to Perardi about why she had done so.

[7] Again, Youngblood asks this Court to exclude evidence of the contents of these communications, despite their impact on the decision-making processes of his victims. *See* Def.'s Mot. [ECF No. 64] at 9–11. Witness testimony and other evidence will show that Youngblood directed, and in many cases personally dictated the contents of, these communications; as such, they are relevant not only to materiality, but also his intent, knowledge, and scheme, as described herein. To the extent there is any danger of unfair prejudice, it can be addressed via voir dire, *see United States v. Bright*, 630 F.2d 804, 814 (5th Cir. 1980) (no error in admitting racial slurs and offensive language in light of voir dire questions), or a limiting instruction, *see United States v. Monsivais*, 737 F. App'x 668, 674 (5th Cir. 2018).

income,[8] are all relevant to why victims made the decisions they did. Similarly, Youngblood's actions, including his insistence that victims carry firearms for "protection" from his fabricated threats, are relevant to showing why they acted as they did.[9]

Nor did Youngblood operate in a vacuum. As he admits, his misrepresentations to victims are material if either: (1) a reasonable person would attach importance to them; or (2) he "knew or had reason to know the victims would unreasonably rely on" them. *See id.* at 2. Consequently, Youngblood's familiarity with potential victim reactions is directly relevant to an element the Government must prove. And Youngblood had a wealth of knowledge to draw upon: He knew how his current victims might react to his lies because he knew how his prior victims had reacted to similar ones.

Because Youngblood's statements and actions surrounding the charged offenses are directly relevant to the materiality of his misrepresentations (among other things), they should be admitted and Youngblood's arguments to the contrary should be rejected.

## **CONCLUSION**

Youngblood asks this Court to let him have his cake and eat it, too: He should be permitted to challenge the materiality of his lies to victims on the basis that they were wholly unbelievable

---

[8] Youngblood claims that evidence of his reported income should be excluded because it is irrelevant and unduly prejudicial. *See* Def.'s Mot. [ECF No. 70] at 12–14. However, Youngblood argued at his detention hearing that the large quantity of cash found on his person at the time of his arrest was legitimate income from gambling. It is predictable that Youngblood will argue or imply that his enormous, documented expenditures were paid for in the same way—or at least that the Government's failure to address the issue gives rise to reasonable doubt. The Government has no intention of focusing on Youngblood's tax compliance per se, provided he does not raise the issue himself; however, because the Government must prove that Youngblood obtained money from fraud, the issue of his income is directly relevant to the elements of the charged offenses.
[9] For instance, Youngblood convinced Lane Holloway to perform certain acts in furtherance of the fraud against Eric Perardi by convincing Lane that his family was in danger. Youngblood lent credence to this claim by giving Lane Holloway a firearm out of "concern" for his safety.

under the circumstances, but the Government should be foreclosed from fully explaining those circumstances because it would be unfair to him. The Government respectfully asks this Court to reject his self-serving attempt to hide the full scope of his scheme from the jury.

*Respectfully submitted*,

JAIME ESPARZA
UNITED STATES ATTORNEY

/s/ *Matt Harding*
MATT HARDING
DANIEL D. GUESS
Assistant U.S. Attorneys
903 San Jacinto Blvd., Suite 334
Austin, Texas 78701
Office: (512) 916-5858
Fax:    (512) 916-5854

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA, §<br>§<br>§<br>v. §<br>§<br>SAINT JOVITE YOUNGBLOOD §<br>   a.k.a. Kota Youngblood, §<br>               Defendant. §<br>§ | CRIMINAL NO. A-23-CR-135-RP |

## ORDER ON GOVERNMENT'S REPLY

The Court, having reviewed the Government's Reply, the argument of counsel, and the case file in this case, hereby ORDERS:

I.     The Government's motion in limine to prohibit argument or testimony indicating that victims' naivety, carelessness, negligence, greed, or foolishness, or unreasonable reliance on the statements of the defendant, constitute a defense to wire fraud is GRANTED/DENIED.

This is a preliminary order only. Prior to making any arguments or offering any evidence or testimony excluded above, counsel must approach the Court outside the presence of the jury and obtain the Court's permission to make such argument or offer such evidence or testimony.

_____
ROBERT L. PITMAN
UNITED STATES DISTRICT JUDGE

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the Government's filing have been delivered on March 11, 2024 via the CM/ECF system to:

Charly Herring
Jose Gonzalez-Falla
Attorneys for Defendant Saint Jovite Youngblood

                                                /s/ *Matt Harding*
                                                MATT HARDING
                                                Assistant U.S. Attorney
                                                903 San Jacinto Blvd., Suite 334
                                                Austin, Texas 78701
                                                Office: (512) 916-5858
                                                Fax:    (512) 916-5854