UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | NO.   A-23-CR-135 (RP) |
| | § | |
| SAINT JOVITE YOUNGBLOOD | § | |

MOTION TO SUPPRESS STATEMENTS

TO THE HONORABLE UNITED STATES DISTRICT JUDGE ROBERT PITMAN:

NOW COMES Defendant Saint Jovite Youngblood ("Mr. Youngblood"), through undersigned counsel, and files this motion to suppress his statements made to FBI agents on July 13, 2023. On that date, FBI agents executed a search warrant on Mr. Youngblood's home. Special Agent Justin Noble questioned Mr. Youngblood while executing the search warrant, knowing Mr. Youngblood was already represented by counsel. Agent Noble did not *Mirandize* Mr. Youngblood. He detained him, handcuffed him, and questioned him, all the while knowing Mr. Youngblood had retained a criminal defense attorney.

The Court should, pursuant to the Fifth Amendment to the U.S. Constitution and *Miranda v. Arizona*, 384 U.S. 436 (1966), suppress all statements made by Mr. Youngblood to Agent Noble during the unlawful questioning on July 13, 2023.

In support of his motion, Mr. Youngblood shows as follows:

I.    **Factual Background**[1]

---

[1] This summary comes from the Body-Worn Camera Footage from FBI Special Agent Justin Noble, MP4 Video file produced by the government under the title F3095735_2023-07-13T13.30.27.380Z_1311. *See* **Exhibit A.** On January 22, 2024, defense counsel specifically requested that the government provide all body-worn camera ("BWC") footage from the execution of the search warrant at Mr. Youngblood's home. Defense counsel made subsequent follow-up requests on the status of this discovery item. The government produced this BWC footage to defense counsel on March 1, 2024, the motions deadline set by the court. That production included a total of 26 different BWC videos, each from a different FBI agent present at the search warrant. Videos were not identified by officer, necessitating counsel's review of every video to determine which video related to which officer. Counsel

On July 10, 2023, U.S Magistrate Judge Mark Lane signed a search warrant for Mr. Youngblood's residence located at 11404 Runnel Ridge Drive in Manor, Texas.[2] The affidavit in support of the search warrant application, authored by FBI Agent Lindsay Wilkinson, explained that in April 2023 the FBI had begun investigating fraudulent activity allegedly perpetrated by Mr. Youngblood.[3] According to the search warrant affidavit, the FBI believed that Mr. Youngblood made false statements to induce victims to pay him money to protect them from fictitious threats from "the Cartel" and simultaneously promised that their payments would serve as investments in valuable assets with high yield returns.[4] The search warrant detailed some of the alleged false statements that victims attributed to Mr. Youngblood:

> According to victims, Youngblood claimed to be prior Special Forces in the U.S. military and to have ties to other government agencies. Over a recorded conversation with FBI Undercover Employee (UCE) on May 1, 2023, Youngblood told the UCE he currently freelanced for the Department of Defense and had served in the military for 22 years including as a Delta Force for seven years, for the Army's 82nd Airborne, and for the Special Assignment Gorup. Record checks of U.S. military databases indicate Youngblood has never served in the U.S. military.[5]

Through its investigative efforts, including sending in an undercover FBI agent to meet with Mr. Youngblood in person in May 2023, the FBI believed that Mr. Youngblood's false credentials were a part of his method to defraud victims out of their money. The search warrant also noted that the FBI believed Mr. Youngblood had reportedly gone by a variety of names,

---

reviewed the lengthy BWC production as expeditiously as possible, identified the suppression issue set out herein, and prepared this motion for the Court. Defense counsel requests that this motion be considered along with all other pretrial motion filings by the parties at the April 5, 2024, docket call setting. Mr. Youngblood objects to any delay in his trial setting.

[2] This search warrant was filed under seal but is available to the Court at Case No. 1:23-mj-00441-ML, ECF No. 1 ("Application for a Warrant by Telephone or Other Reliable Electronic Means") (hereinafter "SW Affidavit").
[3] SW Affidavit, ¶ 6.
[4] SW Affidavit, ¶ 7.
[5] SW Affidavit, ¶ 10.

including "Kota," "Saint Jovite LaKota Youngblood," "Saint Jadenne Youngblood," and "Dennis Schuler."[6]

On July 11, 2023, criminal defense attorney Marc Chavez reached out to the FBI and informed them that he represented Mr. Youngblood. *See* **Exhibit B.**

On July 13, 2023, approximately 26 FBI agents went to Mr. Youngblood's residence to execute the search warrant. Special Agent Justin Noble was lead case agent along with the search warrant affiant, Special Agent Lindsay Wilkinson.

Within a minute of arriving on the scene where other FBI agents were actively staged and ready to enter the residence, Agent Noble called Mr. Youngblood's attorney. One side of the conversation is audible on Agent Noble's body camera footage. It captures him making contact with attorney Chavez and stating the following:

"Hey Marc, this is Justin Noble with the FBI how you doing? Good, hey, I'm at Kota Youngblood's house we're executing a federal search warrant here this morning. We're doing a surround and call out so if you have his number, can you call him and tell him to come outside and all the occupants to come outside. [Faint voice on other end of call.] It's an FBI federal search warrant so if you could just tell him to come out, now, thanks, thank you."[7]

Mr. Youngblood's wife exited the residence first, and one of the other FBI agents told Agent Noble to "see if you can get a number for him." Agent Noble responded, "The attorney is calling him."[8]

---

[6] SW Affidavit, ¶ 5.a.
[7] Exhibit A, BWC F3095735_2023-07-13T13.30.27.380Z_1311at min 3:15.
[8] Exhibit A, BWC F3095735_2023-07-13T13.30.27.380Z_1311at min 5:10.

3

After Mr. Youngblood exited the residence barefoot and with his hands over his head, FBI agents immediately patted him down and then Agent Noble handcuffed him.[9] Mr. Youngblood identified himself as Kota Youngblood, the names agents used to call him out over the bullhorn. Agent Noble walked Mr. Youngblood across the street in handcuffs and had him sit on the curb.

Mr. Youngblood asked Agent Noble what the FBI was executing the search warrant for, and Agent Noble told him "I'll explain it to you later."[10] Mr. Youngblood asked what the agents were looking for and Agent Noble told him that "I'll leave the attachment that shows everything we're looking for and taking from your house today."[11] Agent Noble then began asking Mr. Youngblood the following questions:[12]

"Are you prior military?"

"Prior law enforcement?"

"Prior CIA?"

"Prior DOD"

Mr. Youngblood answered no. The government now seeks to use these statements by Mr. Youngblood against Mr. Youngblood at his trial as an admission against his interest and as evidence that he knew that the representations he made to the alleged victims in this case were indeed false.

Agent Noble told Mr. Youngblood that he was not under arrest or charged with anything. Agent Noble also told Mr. Youngblood that he had already contacted his attorney.

---

[9] Exhibit A, BWC F3095735_2023-07-13T13.30.27.380Z_1311at min 6:50.
[10] Exhibit A, BWC F3095735_2023-07-13T13.30.27.380Z_1311at min 8:33.
[11] Exhibit A, BWC F3095735_2023-07-13T13.30.27.380Z_1311at min 9:50.
[12] Exhibit A, BWC F3095735_2023-07-13T13.30.27.380Z_1311at min 10:15-10:34.

Agent Noble then continued questioning Mr. Youngblood about his name and the following exchange occurred:[13]

    Noble: You can ask, what do you want to ask?

    Youngblood: I don't understand why I'm here.

    Noble: I told you. We are executing a federal search warrant. We're with the FBI. And I'm going to leave you a copy of the search warrant. I already contacted your attorney. Your attorney knows that we're here.

    Youngblood: Hopefully, because he didn't tell us anything.

    Noble: Well, I called him this morning as soon as we arrived. So, we're executing a federal search warrant at your house. Any other questions? What's your real name?

    Youngblood: That's my real name.

    Noble: That's your real name? It's not Dennis Shuler?

    Youngblood: No, it's not. It's Saint Jovite Kota Jadenne Youngblood.

    Noble: Has it ever been Dennis Shuler?

    Youngblood: It's Saint Jovite Kota Jadenne Youngblood.

    Noble: Ok. Has it ever been Dennis Shuler?

    Youngblood: Saint Jovite Kota Jadenne Youngblood.

    Noble: Ok.

    Youngblood: What time did you call Mr. Chavez?

    Noble: When we arrived.

    Noble: So when we're done clearing your house, we're going to be executing a search warrant so we'll be here for a little bit y'all are free to leave, so, but the vehicles are included in the search warrant so we're going to search those. Do you have someone to come get you or do you want to stay?

---

[13] Exhibit A, BWC F3095735_2023-07-13T13.30.27.380Z_1311at min 12:05 -13:18.

The government also seeks to use these statements by Mr. Youngblood against Mr. Youngblood at his trial.

Following execution of the search warrant, Mr. Youngblood was released. He was subsequently arrested on July 26, 2023, pursuant to a federal arrest warrant.[14] Mr. Youngblood is now charged via Second Superseding Indictment with four counts of wire fraud in violation of 18 U.S.C. § 1343 (Counts 1-4) and with one count of engaging in a monetary transaction in criminally derived property in violation of 18 U.S.C. § 1957. ECF. No. 45. Trial is set for April 15, 2024.

## II.     Legal Standard

The Fifth Amendment provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself....".  U.S. Const. amend. V.  "To counteract the coercive pressure [of custodial interrogation], *Miranda* announced that [government] officers must warn a suspect prior to questioning that he has the right to remain silent, and a right to the presence of an attorney." *Maryland v. Shatzer*, 559 U.S. 91, 103–04 (2010).

These procedural safeguards are meant to balance the "compulsion inherent in custodial surroundings." *Id.* at 458. An individual can waive his *Miranda* rights so long as he does so "voluntarily, knowingly, and intelligently." 384 U.S. at 444. The prosecution has the burden of establishing a voluntary, knowing, and intelligent waiver of the *Miranda* rights. *Tague v. Louisiana*, 444 U.S. 469 (1980). This burden is a heavy one. *North Carolina v. Butler*, 441 U.S. 369, 373 (1979).

"*Miranda* warnings must be administered prior to 'custodial interrogation.'" *United States v. Bengivenga,* 845 F.2d 593, 595 (5th Cir.1988) (quoting *Miranda*, 384 U.S. at 479). "A suspect

---

[14] This arrest warrant is available as ECF No. 2 in Case No. 1:23-mj-00484-SH.

is ... 'in custody' for *Miranda* purposes when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." *Id.* at 596. "Two discrete inquiries are essential to the determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was at liberty to terminate the interrogation and leave." *J.D.B. v. N. Carolina,* 564 U.S. 261, 270 (2011). "The reasonable person through whom we view the situation must be neutral to the environment and to the purposes of the investigation—that is, neither guilty of criminal conduct and thus overly apprehensive nor insensitive to the seriousness of the circumstances." *Bengivenga,* 845 F.2d at 596.

A determination of whether a defendant is "in custody" for *Miranda* purposes depends on the "totality of circumstances." *California v. Beheler,* 463 U.S. 1121, 1125 (1983). "[T]he subjective views harbored by either the interrogating officers or the person being questioned are irrelevant." *J.D.B.,* 264 U.S. at 271 (internal quotation marks omitted). Because no single factor is determinative, the Fifth Circuit considers several factors, for which no single factor is determinative, in deciding whether a person is in custody for *Miranda* purposes-- "the length of the questioning"; "the location of the questioning"; "the accusatory, or non-accusatory, nature of the questioning"; "the amount of restraint on the individual's physical movement"; and "statements made by officers regarding the individual's freedom to move or leave." *United States v. Wright*, 777 F.3d 769, 775 (5th Cir. 2015).

### III.     Argument

The Court should suppress all statements made by Mr. Youngblood to FBI Special Agent Justin Noble. Agent Noble's questioning of Mr. Youngblood occurred in clear violation of *Miranda*. A reasonable person in Mr. Youngblood's position would not have felt free to leave. The restraint on Mr. Youngblood's physical movement, the accusatory nature of the questioning, and the statements made by officers regarding Mr. Youngblood not being free to leave at the time of questioning all weigh in favor of finding Mr. Youngblood was in custody.

The Fifth Circuit, in *United States v. Cavazos*, affirmed a finding that the defendant was in custody for the purposes of *Miranda* where officers executed a search warrant at the home of the defendant. 668 F.3d 190, 194-95 (5th Cir. 2012). In *Cavazos*, the defendant was immediately located and handcuffed. *Id*. While the officer in *Cavazos* told the defendant the interview was "non-custodial," the Fifth Circuit held this was not determinative because it was not equivalent to an assurance that he could "terminate the interrogation and leave." *Id* at 195.

Agent Noble took Mr. Youngblood into custody when he handcuffed him and sat him on the curb outside while the FBI executed the search warrant on his home; Mr. Youngblood was not free to leave. This case is functionally identical to *Cavazos*. Here, Mr. Youngblood was handcuffed behind his back and barefoot and seated on the curb. Though Agent Noble told Mr. Youngblood that he was not under arrest at that time, Agent Noble told Mr. Youngblood that he and his family were not free to leave until *after* agents cleared the residence and executed the search warrant.[15] Agent Noble further told Mr. Youngblood that if he wanted to leave at that point, he would have to find someone to come pick him up as the agents were going to search his vehicles and Mr.

---

[15] Exhibit A, BWC F3095735_2023-07-13T13.30.27.380Z_1311at min 13:18.

Youngblood was not free to drive away in his car. Mr. Youngblood was handcuffed, barefoot, and told to remain seated on the curb for the entire time Agent Noble questioned him from above.

Despite knowing Mr. Youngblood was represented by counsel, Agent Noble proceeded to question Mr. Youngblood on topics intentionally calculated to elicit incriminatory admissions.[16] Agent Noble, a lead case agent on investigation into Mr. Youngblood, was aware of the content of Mr. Youngblood's alleged false statements that were the subject of the FBI investigation. As explained in the search warrant affidavit, FBI agents believed that Mr. Youngblood had falsely represented his military service and military connections to victims. FBI agents further believed that Mr. Youngblood had used a variety of names over the course of his life to perpetuate his fraud scheme.

If Agent Noble wanted to question Mr. Youngblood, he was required to *Mirandize* Mr. Youngblood and seek a knowing and voluntary waiver of his right to have his counsel present during questioning. Instead, Agent Noble immediately sought to elicit answers to questions that he knew went to the heart of the allegations the FBI was investigating against Mr. Youngblood: that he was misrepresenting his identity and credentials to convince people to give him money to

---

[16] Though Mr. Youngblood had not been formally charged at the time the FBI executed the search warrant, Agent Noble's conduct in questioning Mr. Youngblood knowing he had retained a criminal defense attorney has concerning implications under the Sixth Amendment also. *Massiah v. United States*, 377 U.S. 201 (1964). The Sixth Amendment guarantees a criminal defendant the right to rely on counsel as a "medium" between himself and the State and "includes the State's affirmative obligation not to act in a manner that circumvents the protections accorded the accused by invoking this right." *Whittington v. United States*, 2009 WL 10718750, at *10 (W.D.T.X.- Del Rio July 29, 2009) (quoting *Maine v. Moulton*, 474 U.S. 159, 176 (1985)). "[K]nowing exploitation by the State of an opportunity to confront the accused without counsel being present is as much a breach of the State's obligation not to circumvent the right to the assistance of counsel as is the intentional creation of such an opportunity." *Moulton*, 474 U.S. at 176; *see also United States v. Brown*, 551 F.2d 639, 644 (5th Cir. 1977) (finding that district court should have suppressed statements defendant made to FBI agents who questioned her on the way to per preliminary hearing when "[i]t should have been obvious an attorney would be present to represent her").

9

protect them from non-existent threats. Agent Noble's intentional, un-*Mirandized* questioning of Mr. Youngblood was calculated to elicit incriminatory admissions and was unlawful.

## IV. Conclusion

For all these reasons, the Court should suppress all statements made by Mr. Youngblood on July 13, 2023, as they were obtained in violation of the Fifth Amendment and *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Should the Court determine that factual disputes surrounding the circumstances of the statements exist, Mr. Youngblood requests an evidentiary hearing on this motion to resolve any factual disputes.[17]

                    Respectfully submitted,

                    MAUREEN SCOTT FRANCO
                    Federal Public Defender

                    /s/ CHARLOTTE A. HERRING
                    Assistant Federal Public Defender
                    Western District of Texas
                    Lavaca Plaza
                    504 Lavaca St., Ste. 960
                    Austin, Texas 78701
                    (512) 916-5025
                    (512) 916-5035 (FAX)
                    TX Bar Number: 24064026

---

[17] Should the Court determine that an evidentiary hearing is appropriate, Mr. Youngblood requests, pursuant to Rule 26.2 of the Federal Rules of Criminal Procedure, that the Government disclose to defense counsel at least forty-eight hours prior to the hearing any statements, including grand jury testimony, of suppression hearing witnesses. Mr. Youngblood further requests that the government disclose any *Brady* or *Giglio* materials within this time frame to avoid any delays in conducting the hearing. Mr. Youngblood expressly reserves the right to raise any other motions based on facts and evidence that may arise during any evidentiary hearings in this case. As the government is still producing discovery to counsel, Mr. Youngblood reserves his right to file additional pretrial motions as additional discovery may necessitate.

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of March, 2024, I electronically filed the foregoing Motion to Suppress Statements, and accompanying exhibits, with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Dan Guess
Matt Harding
Assistant U.S. Attorneys
903 San Jacinto, Ste. 334
Austin, TX 78701

/s/  CHARLOTTE A. HERRING

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **V.** | § | NO.   A-23-CR-135 (RP) |
| | § | |
| **SAINT JOVITE YOUNGBLOOD** | § | |

**EXHIBIT LIST**

**Exhibit A** – AXON Body Worn Camera video from FBI Agent Justin Noble, file title F3095735_2023-07-13T13.30.27.380Z_1311 (provided to the Court via disc)

**Exhibit B** – Email dated July 11, 2023 from attorney Marc Chavez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| V. | § § | NO.   A-23-CR-135 (RP) |
| SAINT JOVITE YOUNGBLOOD | § § | |

**O R D E R**

On this date came on to be considered Defendant's Motion to Suppress Statements. The Court, having considered the motion, is of the opinion that the motion should be granted.

IT IS THEREFORE **ORDERED** THAT the Defendant's Motion to Suppress Statements is hereby **GRANTED.** Defendant's statements made on July 13, 2023 to FBI agents are HEREBY SUPPRESSED.

SIGNED this _____ day of _____, 2024.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE