UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| § | |
| V. § | CAUSE NO. A-23-CR-135 (RP) |
| § | |
| SAINT JOVITE YOUNGBLOOD § | |

**MOTION FOR JUDGMENT OF ACQUITTAL ON COUNTS ONE AND FIVE**

TO THE HONORABLE ROBERT PITMAN, UNITED STATES DISTRICT JUDGE:

The defendant, Saint Youngblood, moves this court to enter a judgment of acquittal as to Counts 1 and 5, pursuant to Fed. R. Crim. P. 29(c). It is the government's burden to prove that Mr. Youngblood caused the wires to be sent. To prove causation, the government must show that that the wire specifically charged in Count One was made "in furtherance" of the scheme to defraud. *United States v. Ingles*, 445 F.3d 830, 837 (5th Cir. 2006). To meet the "in furtherance" requirement, the government must prove that the wires were "part of the execution of the scheme *as conceived by the perpetrator at the time*." *Schmuck v. United States*, 489 U.S. 705, 715 (1989). At trial, the government failed to put on sufficient evidence that Mr. Youngblood caused the wire and failed to put on sufficient evidence that the wire was made in furtherance of the fraudulent scheme. The Court should enter a judgment of acquittal on Counts One and Five of the Second Superseding Indictment.

I.   **Statement of the Law**

The mail and wire fraud statutes are interpreted the same. *United States v. Mills*, 199 F.3d 184, 188 (5th Cir. 1999) ("The Supreme Court has said that because the mail and wire fraud statutes share the same language in relevant part, the same analysis applies to each"). "The federal [wire] fraud statute does not purport to reach all frauds, but only those limited instances in which the use

of the [wires] is part of the execution of the fraud, leaving all other cases to be dealt with by appropriate state law." *Kann v. United States*, 323 U.S. 88, 95 (1944).

The government was required to establish that Mr. Youngblood (1) intentionally participated in scheme to defraud and (2) used the wire communications to further that scheme. *Ingles*, 445 F.3d at 835. In that regard, "the relevant question at all times is whether the [wire] is part of the execution of the scheme as conceived by the perpetrator at the time." *Schmuck*, 489 U.S. at 715. The wire fraud statute requires the wire caused by the defendant's actions be "incident to an essential part of the scheme." *Ingles*, 445 F.3d at 835. To show that a wire is "incident to an essential part of the scheme," the government must demonstrate that "completion of the alleged scheme ... depend[ed] in some way on the information or documents that passed through the [wire]." *Id.*

A wire is not for the purpose of furthering the scheme to defraud if the wire is sent after the scheme has reached its fruition. *See Kann v. United States*, 323 U.S. 88, 93-94 (1944). A fraudulent scheme reaches fruition when defendants cash their fraudulently acquired checks because "[b]y cashing it they received the moneys it was intended they should receive under the scheme" and they "had received it irrevocably." *Id.*; *United States v. Evans*, 148 F.3d 477, 483 (5th Cir. 1998); *see also United States v. Taylor*, 789 F.2d 618, 620 (8th Cir. 1986) (if the use of the wire occurs "after [the] scheme reaches fruition," it is generally not in furtherance of the fraudulent scheme").

Count One charges that on or about July 27, 2022, Eric Perardi wired $36,000 drawn from his Washington Federal Bank account to his own Wells Fargo checking account. At trial, Mr. Perardi testified that on July 26, 2022, he wrote a check to James Holloway for $83,000 from his Wells Fargo Account number ending in 7818, which was the business checking account for his

business TAP Development. On July 27, 2022, James Holloway cashed the $83,000 check from TAP Development at 9:32 AM. Later in the day on July 27th, Mr. Perardi requested a partial disbursement from his home equity line of credit ("HELOC") account to be transferred into his Washington Federal account number ending in 6079. Mr. Perardi then initiated a wire transfer at 1:28 PM on July 27th of $36,000 from his Washington Federal account to his Wells Fargo personal checking account ending in 6673. This wire transfer was completed at approximately 2:30 PM on July 27, 2022. Finally, *the following day*, Mr. Perardi transferred $29,000 from his personal Wells Fargo account ending in 6673 to his Wells Fargo TAP Development account ending in 7818.

The $36,000 wire transfer on July 27, 2022, was between two of Mr. Perardi's bank accounts. The wire was not caused by Mr. Youngblood, nor did it further the scheme to defraud because the scheme had concluded when Mr. Holloway cashed the $83,000 check earlier that day.

## II.   Argument

The government failed to put on evidence that the success of the alleged fraudulent transaction—that is, the successful conversion of Eric Perardi's $83,000 check written from Wells Fargo TAP Development business account xxx7818 to James Holloway for conversion to cash for Mr. Youngblood—in any way depended on the wire. It did not.

On July 26, 2022, Eric Perardi wrote a check to James Holloway in the amount of $83,000 from his TAP Development Wells Fargo Acct xxx7818. Defendant's Trial Exhibit ("Def. Ex.") 1A. Mr. Perardi testified that while he dated the check July 20, 2022, he actually wrote the check on July 26, 2022. He testified that he "wrote [the check] from Miami," and he mailed the check overnight via Fed Ex to James Holloway.

On July 27, 2022, James Holloway cashed the $83,000 check at Wells Fargo at 9:32 am. Def. Ex. 24. Mr. Perardi also testified that Mr. Holloway cashed the check on July 27th. Transcript

Eric Perardi Cross-Examination p. 117:24-25 ("Q. He [James Holloway] cashed it at 9:32 a.m. central time?" A. Yes. I believe he got the Fed Ex that morning.") (copy attached).

Hours after Mr. Holloway had already cashed the $83,000 check, Mr. Perardi requested a partial disbursement from his HELOC account into his Washington Federal account xxx6079. Def. Ex. 52. Mr. Perardi testified that he requested the disbursement on July 27th at 11:00 AM. Transcript Perardi Cross-Examination p. 114:16-22 ("Q. So I want to go back to this July 27th wire transfer, the one that you talked about yesterday. If we pull up defense 52. We can see that you—this is the Washington Federal record that shows when you requested that disbursement, right, so you did it on July 27th. Looks like the 11:00 in morning; is that right? A. Yes.").

Later in the afternoon on July 27, 2022, Eric Perardi wired $36,000 from his Washington Federal Account xxx6079 to his Wells Fargo personal checking acct xxx6673. Def. Ex. 2 and Ex. 5. This is the wire transaction charged in Count One of the Second Superseding Indictment. Mr. Perardi initiated the wire transaction at 1:28 PM and the wire transaction was completed at 2:30 pm. Def. Ex. 3.

The following day, July 28, 2022, after the wire transaction posted to Mr. Perardi's Wells Fargo personal checking account xxx6673, Mr. Perardi transferred $29,000 from his Wells Fargo personal checking account xxx6673 to his TAP Development Wells Fargo acct xxx7818. Mr. Perardi testified that he personally made the notation "Lawyer Fees" on the transfer line. Def. Ex. 8. Thus, it was not until the day *after* Mr. Holloway cashed the $83,000 check written from Mr. Perardi's TAP Development account that any of the funds wired from Mr. Perardi's Washington Federal account to his personal Wells Fargo account reached his TAP Development account.

Mr. Perardi, in his testimony, summarized these events as follows:

```
 4  Q.   So I just want to -- making this as you've explained
 5  it to us James Holloway cashes your check before you even
 6  disburse from your home equity line of credit and before
 7  you initiate the wire and before the wire's completed and
 8  before you move the money to T.A.P. Development.
 9  A.   Yes.
10  Q.   And the check you wrote to James Holloway was drawn
11  from T.A.P. Development?
12  A.   Yes.
13  Q.   Money from this wire didn't reach T.A.P. Development
14  until the 28th of July, right?
15  A.   Correct.
```

Transcript Perardi Cross-Examination p. 118:4-15.

The $36,000 wire on July 27, 2022, was not for the purpose of furthering the scheme to defraud because the wire was sent after the scheme had reached its fruition as to Count One. The fraudulent scheme was complete prior to Mr. Perardi's wire transfer because Mr. Holloway had already cashed the $83,000 check that Mr. Perardi had written from his TAP Development *before* Mr. Perardi ever wired the money between his Washington Federal Account to his Wells Fargo Personal Account, and *before* he subsequently transferred it to his TAP Development Account. This wire did not *further* the fraud scheme. It was entirely unnecessary for any portion of the completion of the fraud. The fraud was complete before Mr. Perardi even initiated the wire.[1]

---

[1] Additionally, Mr. Perardi testified that pursuant to Temporary Orders entered in his divorce proceeding he was specifically authorized to draw $36,000 against the home equity line of credit for the specific purpose of paying his ex-wife's new residence. Further, by the time the Amended Temporary Orders were entered

In *United States v. Swenson*, the Court granted a judgment of acquittal post-trial in a mail fraud case after finding the government had put on insufficient evidence that the mailings at issue furthered the scheme to defraud. *United States v. Swenson*, 459 F. Supp. 3d 819, 827 (S.D. Tex. 2020), aff'd, 25 F.4th 309 (5th Cir. 2022). In *Swenson*, the defendant operated an adoption agency. The prospective adoptive parents mailed a check to the defendant for an adoption that ultimately fell through. The defendant was charged with a fraud scheme that involved double matching prospective adoptive parents with one birth mother and keeping the hopeful parents' up-front payments even after the adoptions failed. In its ruling granting the motion for judgment of acquittal, the court noted that the government could not rely on the defendant's general business practices and allegations of a "broad scheme to defraud" were insufficient to support a finding that the defendant caused the particular mailed check in question to be sent to perpetuate a fraudulent scheme. *Id.* at 826–27.

As in *Swenson*, Mr. Youngblood did not cause the wire charged in Count One to be sent to perpetuate a fraudulent scheme. The fraudulent scheme had already "reached fruition" at the time of the wire.[2] *Kann*, 323 U.S. at 94. The party who intended to receive the money had already received it irrevocably when Mr. Holloway cashed the $83,000 check before the wire was ever initiated or completed.

---

on July 28, 2022, Mr. Perardi acknowledged that he had already delivered the rental payment associated with the $36,000 authorized draw against his HELOC. Transcript Perardi Cross-Examination p. 122:1-4 (Q: The wire of $36,000 matches exactly the amount you were authorized to have wired out for that account by the divorce court. A: Yes.)

[2] The specific interstate wire alleged in each count is an essential element of the offense. The law is clear, "that each separate use of wire communications constitutes a separate offense under s 1343." *United States v. Heffington,* 682 F.2d 1075, 1081 (5th Cir. 1982) (citing United States v. Crockett, 534 F.2d 589 (5th Cir. 1976); Henderson v. United States, 425 F.2d 134 n.4 (5th Cir. 1970)). Because the specific wire alleged is an essential element of each offense and the government must prove that Mr. Youngblood "caused" that specific wire, it is not enough for the government to claim that a "continuing scheme" relieves it of this burden as to each count.

In *United States v. Evans*, the Fifth Circuit reversed the defendant's mail fraud convictions because the scheme had "cleared the final hurdle" before the mailing occurred. 148 F.3d 477, 483 (5th Cir. 1998). The mailing was, therefore, entirely incidental to the scheme. *Id.* As in *Kann* and *Evans*, the wire in Count One was incidental to the scheme here because the funds had already irrevocably been transferred out of Mr. Perardi's TAP Development Wells Fargo account hours before the wire transaction was initiated and over a day before any portion of the money that was wired reached the account Mr. Perardi wrote the check from.[3]

Count Five charges Mr. Youngblood with money laundering. Money laundering requires that the funds allegedly laundered by Mr. Youngblood be the proceeds of specified unlawful activity. 18 U.S.C. § 1956(a)(1)(B). The government has charged wire fraud in Count One as the "unlawful" activity in Count Five. Because Count Five depends on the success of the government's wire fraud charge in Count One, as the same transaction—the $83,000 check from Eric Perardi to James Holloway—is the basis for both counts, the Court should enter a judgment of acquittal on both Count One and Count Five.

Respectfully submitted,

MAUREEN SCOTT FRANCO
Federal Public Defender

_____
/s/ CHARLOTTE A. HERRING
Assistant Federal Public Defender
Western District of Texas
Lavaca Plaza
504 Lavaca St., Ste. 960

---

[3] Notably, the amount of money Mr. Perardi wired ($36,000) was significantly less than the amount of the check Mr. Perardi wrote to Mr. Holloway ($83,000). Mr. Perardi never transferred the full $36,000 to the account he wrote the check from (TAP Development). The amount he subsequently transferred to his TAP Development account was $29,000. Mr. Perardi testified at trial that he had sufficient funds in the TAP Development account to cover the $83,000 check when he wrote it. Transcript Perardi Cross-Examination p. 101:4-25 to 102:1-10. This further underscores that the $36,000 wire transaction was not essential or necessary to further the fraud scheme.

Austin, Texas 78701  
(512) 916-5025  
(512) 916-5035 (FAX)  
Bar Number: TX 24064026  
*Attorney for Defendant*

## CERTIFICATE OF SERVICE

    I hereby certify that on the 3rd day of May, 2024, I electronically filed the foregoing Defendant's YOUNGBLOOD'S MOTION FOR JUDGMENT OF ACQUITTAL with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Dan Guess  
Matt Harding  
Assistant U.S. Attorneys  
903 San Jacinto, Ste. 334  
Austin, TX 78701

                                            /s/ CHARLOTTE A. HERRING

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| | § | |
| **V.** | § | **CAUSE NO. A-23-CR-135 (RP)** |
| | § | |
| **SAINT JOVITE YOUNGBLOOD** | § | |

## EXHIBITS

**Transcript of Eric Perardi Cross-Examination, pages 98-122**